Bigelow v. Cassedy.

BIGELOW, appellant, and CASSEDY and others, respondents.

1. As a general rule, all persons who have acquired an interest in the lands mortgaged, where the mortgage is due and liable to be foreclosed, have a right to disengage the property from all encumbrances, when it becomes necessary to do so in order to make their own claims available or beneficial.

2. The junior mortgagee succeeds, by subrogation, to the rights and interest of the prior mortgagee in the lands, and the right to redeem a mortgage does not carry with it the right to an assignment of the mortgage, unless the redeeming party occupies the position of surety for the mortgage debt.

3. As to sureties, the right to an assignment is limited to such securities as continue to exist, and do not, by payment, become extinguished as to the principal debtor.

4. The mere fact that a person occupies the position of a second mortgagee, or subsequent judgment creditor, does not entitle him to redeem the prior mortgage. Unless some special equity exists in the subsequent encumbrancer, the prior mortgagee has a right to retain his security, and may refuse to surrender it, so long as the mortgagor does not wish to discharge it.

5. If the second encumbrancer happens to be in such a position that he is in danger of losing the benefit of his security, unless he is permitted to redeem, and the circumstances are such that equity would subrogate him, upon making these facts known to the first mortgagee, and making him an unconditional tender of his money, he would be put upon his inquiry, and, after taking a reasonable time to be advised, his refusal to accept the tender and deliver up his mortgage would be at his peril.

Appeal from a decree of the Court of Chancery. The opinion of the Chancellor is reported in 10 *C. E. Green* 112.

*Mr. C. Parker*, for appellant.

*Mr. Gilchrist*, for respondents.

The opinion of the court was delivered by

Van Syckel, J.

Bigelow held a first mortgage, executed by Rommelt and Leicht, upon two acres of land, on which is a large brewery, with stables, wagon-houses, and the dwelling of the mortgagors. Subsequently, and subject to this mortgage, the property of the mortgagors became vested in the respondents, as their trustees in bankruptcy.

Bigelow foreclosed his mortgage, making the mortgagors and these trustees in bankruptcy parties to his bill of foreclosure, and obtained a decree for the sale of the mortgaged premises, caused an execution to be issued thereupon, and pressed a sale. Pending the proceedings for foreclosure, the title acquired by the trustees in bankruptcy was, under the sanction of the court of bankruptcy, reassigned to the mortgagors, who thereupon, for the benefit of their creditors, of whom Bigelow was one, executed a mortgage to the same trustees, upon the same two acres of land, together with other lands, and, also, a chattel mortgage upon all the tools, machinery, implements, and other personal property used in the brewery business.

Under these circumstances, the trustees tendered Bigelow the amount due on his decree, and demanded an assignment of it, which he refused to make. The trustees then paid the money into court, and filed their bill to redeem, and to compel Bigelow to make an assignment to them of his decree.

The complainants insist upon their right to an assignment, and that Bigelow is not entitled to interest upon his decree, after the tender.

As a general rule, all persons who have acquired an interest in the lands mortgaged, where the mortgage is liable to be foreclosed, have a right to disengage the property from all encumbrances, when it becomes necessary to do so in order to make their own claims available or beneficial. This does not carry the right to demand of the mortgagee an assignment of his security, nor to insist upon the right to redeem before the due day of the mortgage, for it is manifest that it would im-

pair the obligation of his contract, to compel him to accept the money, before the maturity of the bond which he had taken.

In *Smith* v. *Green*, 1 *Coll.* 555, the Vice-Chancellor admitted the strict law to be that the first mortgagee is not bound to assign his securities. In *Pearce* v. *Morris*, *Law Rep.* 8 *Eq.* 217, the counsel of the plaintiff conceded that a mortgagee cannot be compelled to transfer his mortgage, but in that case he had accepted a tender of the principal, interest and costs from the person who claimed a right to redeem, and Lord Romilly, therefore, held that he was bound to convey the legal estate to the plaintiff. The reversal of this case in 5 *Ch. Appeals* 227, was upon other grounds.

The court, in *Pardee* v. *Van Anken*, 3 *Barb.* 534, regarded the junior mortgagee as a surety. The doctrine laid down in this case, that the right to an assignment might spring directly from the mere right of redemption, was disclaimed by the Court of Appeals, of New York, in *Ellsworth* v. *Lockwood*, 42 *N. Y.* 89, where Justice Sutherland reviews the case in 3 *Barb.*, and declares the law to be that the junior mortgagee succeeds by subrogation, on settled principles of equity, to the rights and interest of the prior mortgagee in the lands, as security for the amount he pays, without any assignment or act of transfer by or on the part of the junior mortgagee. He holds the right of redemption and of subrogation by law to be inconsistent with the right to an assignment of the debt, and of the evidence of the debt, inasmuch as the assignment assumes the continued existence of the debt, and the subrogation by law assumes its payment; and that the right to redeem a mortgage does not carry with it the right to an assignment of the mortgage, unless the redeeming party occupies the position of surety for the mortgage debt. The court refused to entertain a bill in *Lamson* v. *Drake*, 105 *Mass.* 564, by a tenant for life, to compel the mortgagee, to whom he had tendered the amount due on his mortgage, to make an assignment of it, but maintained the bill simply as a bill to redeem. The case of *Saunders* v. *Frost*, 5 *Pick.* 266,

which was cited in support of the contrary doctrine, was con-
trolled by a Massachusetts statute, as appears by a note to
*Loring* v. *Cooke*, 3 *Pick.* 48. In the latter case, it was held
that a person entitled to redeem must make an unconditional
tender. The same rule was recognized by Chancellor Zabris-
kie in *Hamilton* v. *Dobbs*, 4 *C. E. Green* 227, where he states
that a tenant, or other person like a second mortgagee, or
judgment creditor, having a right to redeem, has not strictly
the right to a written assignment of the bond and mortgage,
but he stands by redemption in place of the first mortgagee,
and is subrogated to his rights. He has the right to have
the mortgage delivered to him uncancelled, which, in equity,
operates as an assignment of it.

In *Hill* v. *White, Saxt.* 435, after the first mortgagee had
prosecuted his bond to judgment and execution at law, under
which he purchased the mortgaged premises, the second mort-
gagee filed his bill to redeem, and although he had tendered
the first mortgagee the amount due him, he was allowed to re-
deem only upon terms of paying the full principal and interest.
Upon redemption, an assignment was directed to be made
of the mortgage, but no question was made upon this point,
and it may have been deemed necessary for the second mort-
gagee to have not only an equitable, but a legal, assignment of
the first mortgage to enable him to maintain ejectment against
the first mortgagee who was in possession of the premises as
purchaser under the execution at law.

The cases cited relating to principal and surety, and
those depending upon a contract, express or implied, be-
tween the contending parties, are governed by a different
rule, and are not applicable to this discussion. In these
instances the surety may have a right to succeed to the
legal standing of his principal, and upon that ground he
might be entitled to a cession of actions, and his claim
to an assignment could be maintained. But even in such
case, the general rule must be qualified by limiting it to
such securities as continue to exist, and do not by pay-
ment become extinguished as to the principal debtor. The

right of the surety, on paying the original debt, to have an assignment of any independent collateral securities held by his creditor, is not to be confounded with the supposed right to have the original debt assigned. The assignment of the instrument on which he was surety, which had been already paid, would be a mere nullity in equity, as well as at law, since it could not have, in the hands of the surety, any subsisting obligation. But the mere fact that a person occupies the position of a second mortgagee, or subsequent judgment creditor, does not entitle him to redeem the prior mortgage. Unless some special equity exists in the subsequent encumbrancer, the prior mortgagee has a right to retain his security, and may refuse to surrender it. It would greatly depreciate the value of a first mortgage, if any one by taking a second encumbrance could, in all cases, compel the holder to give it up. He is a stranger to the second mortgagee, the registry of such second mortgage not being constructive notice to him of its existence. It is the well settled rule in this state, that a prior mortgagee is not bound to notice the bill of a subsequent mortgagee filed on his mortgage, although he is made a party to it. Even if the bill charges that the prior mortgage is fraudulent, or void, or paid, and it turns out to be a valid, subsisting encumbrance, the mortgaged premises will not be sold to pay the prior mortgage, without the consent of the prior mortgagee; all that can be sold without such consent, will be the equity of redemption mortgaged to the complainant. *Gihon* v. *Belleville Co.,* 3 *Halst. Ch.* 536 ; *Potts* v. *N. J. Arms Co.,* 2 *C. E. Green* 518.

This illustrates the regard which is had to the right of the prior mortgagee to retain his security, and is inconsistent with the doctrine that from the mere relation of second mortgagee to the property, the right to redemption accrues. This right would not only be a very slender one, but the position of the prior mortgagee would be rendered very hazardous, if he is compelled to decide, at his peril, whether he will refuse or accept a tender of his money from any one not in privity with him, but merely claiming to be a subsequent mortgagee. By

the civil law, when a second creditor paid the prior creditor, or deposited the amount of the debt on his refusal to receive payment, he established his own right.    He thereby succeeded to him by operation of law, and was subrogated as of right, without the necessity of any special agreement to that effect, on the ground that it was just that the payment which was made by the subsequent creditor to the more ancient one, in virtue of the privilege which the law allowed him, should not result to his prejudice, and be unavailable to him.    By this means only could he preserve the property charged.    In this respect, even under the civil law, a creditor who redeemed a prior encumbrance, was distinguished from a surety who paid the debt, and who was, by reason thereof, entitled to a cession of actions, thus clearly preserving the distinction between subrogation and assignment.

The reason of the civil law rule, that in all cases, the later encumbrancer could redeem, was that, so long as the more ancient creditor remained unpaid, the subsequent creditor could not proceed for payment against the thing hypothecated, but that he must first pay the precedent creditor. *Dixon on Subrogation, p.* 13.    This rule, as has already been shown, has not been adopted into our law.    The second mortgagee takes with full notice of the prior burden, and he may proceed to realize the fruits of his security without regarding the prior lien.

In the absence of any special equity, the earlier creditor has a right to retain his investment undisturbed, so long as the mortgagor himself does not wish to discharge the debt. The second mortgagee has everything for which he contracted, and he can, at his pleasure, proceed to foreclosure, and sell all that passes to him by his mortgage deed.

If such second mortgagee happens to be in such a position that he is in danger of losing the benefit of his security, without he is permitted to redeem, and the circumstances are such that equity would subrogate him, upon making these facts known to the first mortgagee, and making him an unconditional tender of his money, he would be put upon his inquiry,

Blancke v. Rogers.

and, after taking a reasonable time to be advised of his rights, his refusal to accept the tender, and deliver up his mortgage uncancelled, would be at his peril. In England, he is allowed six months in which to ascertain whether the person making the offer is entitled to redeem him or not. What would be a reasonable time here, must depend upon the circumstances of each particular case.

In the case now under consideration, Bigelow was not only willing to receive the money due him, but he was using the process of the Court of Chancery to compel its payment. Under the circumstances of the case, a sale of part of the mortgaged premises might greatly endanger the security of the complainants, and they were, therefore, entitled to redeem, but, inasmuch as they did not make an unconditional tender, Bigelow was not bound to accept it. The complainants will be entitled to redeem Bigelow's decree, upon payment to him of the full amount of his decree, interest and costs, and will, thereupon, be subrogated to his rights thereunder. Equity can so control its decree as to effect a complete substitution, without the affirmative act of the complainant to it.

The decree of the Chancellor should be reversed, and the record remitted, that a decree may be made in accordance with the views herein expressed. The appellants should have their costs in this court, and in the court below.

Decree unanimously reversed.