In the matter of the insolvency of the NORTH RIVER CON-STRUCTION COMPANY.

38 433
51 534

A superintendent of the work of constructing a railroad, without any obligation on his part, voluntarily, and supposing that the company was solvent, and merely to befriend the workmen employed, advanced his own money to pay

them for their work. There was no assignment of their claims to him, and no agreement that he was to have the benefit of their lien. Afterwards the company became insolvent.—*Held*, that he was not, by subrogation, entitled to the workmen's statutory lien for those payments.

Petition for payment of wages and money advanced to pay wages.

*Mr. F. W. Stevens*, for petitioner.

*Hon. J. P. Stockton*, Attorney-General, *contra*.

THE CHANCELLOR.

The petitioner claims a lien under the sixty-third section of the act concerning corporations, upon the assets of the North River Construction Company (an insolvent corporation) for work done by him in superintending for that company certain work (grading for the tracks &c. of the New York, West Shore and Buffalo Railroad Company), and for money advanced by him to pay the wages of the workmen employed by him as agent for the construction company in the matter, to do the work. All the work in question was done in November and December, 1883. The work was stopped by the construction company (for want of funds) December 30th, 1883. On January 12th following, the company was, on proceedings in insolvency in this court, declared insolvent and a receiver appointed. The petition states that the amount paid to the laborers by the petitioner for work in November, was $2,562.32, and that it was paid December 20th; and that the amount paid by him to them for wages for work done in December was $3,346.92, and that it was paid January 9th, 1884. It appears by the petition that he was under no obligation to pay these moneys. He was merely a superintendent of the work, and in employing the workmen acted only as the agent of the company. He says he paid the money in the expectation that the company would immediately refund it to him, and that he paid it in ignorance of the financial condition of the company, out of a desire to befriend the workmen, and because he sup-

posed that the company's inability to pay them was merely due to a temporary want of money. As to the money due him for his own wages there is no question that he is entitled to the lien therefor which the statute gives to laborers. Indeed, there is no dispute on that head. The controversy is as to his right to a laborer's lien for the money paid to the workmen for their wages. It is entirely clear that if he has any claim to such lien it must be on the principle of subrogation in equity. He has no assignment, legal or equitable, of the wages paid, nor was there any agreement or understanding between him and the company or the workmen that he was to have any. Nor was there any agreement or understanding that he was to have the benefit of the laborer's lien, or to have any lien at all. According to his own statement, the payments made by him were wholly voluntary. He did not look to subrogation as security. He evidently did not suppose that any security would be needed. Had he supposed so he probably would not have paid the money. He advanced it merely as a loan to the company. He is not entitled to subrogation. In the case cited by counsel for the petitioner, *Coe* v. *Midland Railway Co.*, *4 Stew. Eq. 105*, it is said on the subject of conventional subrogation, that the real question in all such cases is whether the payment made by the stranger was a loan to the debtor through a mere desire to aid him, or whether it was made with the expectation of being substituted in the place of the creditor ; and that in the former case he is not entitled to subrogation, but in the latter he is. Tried by that test, the petitioner is clearly not entitled to subrogation. He was a stranger and advanced the money, according to his own statement, merely to aid the debtor and to befriend the creditor, and with no expectation whatever of being substituted in the place of the creditor. In the case just referred to, the money was advanced by some of the directors of a railroad company, which held its rolling stock under an agreement to pay for it in installments ; the title not to pass to the company until the whole amount agreed to be paid for it should have been paid, and in case of default all previous payments to be forfeited. The railroad company became insolvent and had no money to pay an installment

which became due.  Some of the directors, in order to save the
rolling stock, advanced the money out of their private funds on
the strength of an agreement made by the other members of the
board with them that they should be subrogated to the rights of
the vendors for their repayment, though no resolution to that
effect was passed by the board.  The directors who advanced the·
money not only held a fiduciary relation to the company but
made that advance on an agreement for subrogation for their
security.  They were not strangers.  Moreover, some of them
were guarantors for the company on the contract.  This decision
was on final hearing.  The same matter was before this court
previously on petition for subrogation, and though subrogation
was granted here, the decree was reversed in the court of errors
and appeals ; that court denying that under the circumstances as
they appeared under the petition, the petitioners were entitled to
subrogation.  The opinion contains the following language :  "The
case as here presented does not entitle the petitioners to a decree
for subrogation.  They do not, in their petition, claim to stand
as guarantors on the contract, or that they were in any way held
or bound for its performance.  They only allege that they made
the advances with the understanding that they should be subro-
gated to the right of the owners of the rolling stock to the
extent of such advancements.  I have been unable to find, either
in the petition or evidence, anything to show an agreement with
the original debtor or creditor that these parties should be entitled
to subrogation, or to stand in the place of the vendors of the
stock.  It is not sufficient that a person paying the debt of
another should do so merely with the understanding on his part
that he should be subrogated to the rights of the creditor.  Con-
ventional subrogation can only result from an express agreement
either with the debtor or creditor."  The court held, moreover,
that the proceedings were premature, and that the question could
not, in view of the claim of other lien creditors, properly be·
dealt with in that case until the final hearing.  *Receivers* v.
*Wortendyke, 12 C. E. Gr. 658.*  On the final hearing of the case,
when all the facts were fully before the court, and all parties·
heard upon the question, this court felt entirely at liberty to·

North River Construction Co.'s Case.

decree that on the case as it then stood, the directors who made the advances were entitled to subrogation. Of course, if the case had then been the same as it was on the petition, the decision of the court of errors and appeals would have been conclusive against subrogation, and would have been strictly followed. The statute gives to the laborers in the employ of an insolvent corporation a paramount lien upon its assets for the amount of the wages due to them respectively. The lien was intended for the benefit of workmen in the employ of the insolvent company at the time of its insolvency. It has been held that if the laborer's claim be assigned after the lien has attached, the assignee is entitled to the benefit of the latter (*D. L. & W. R. R. Co.* v. *Oxford Iron Co., 6 Stew. Eq. 192*), but it has never been held that one who lends or advances money to a corporation to enable it to pay laborers, who, if their wages had remained unpaid, would have been entitled to the lien therefor, is, merely by virtue of such loan or advance, entitled to that lien by equitable subrogation. And here, it may be remarked that it by no means appears that the laborers who were paid for work done in November would have been entitled to the lien for their wages ; it does not appear that they were in the employ of the corporation at the time of the insolvency. It is argued, indeed, that the fact that those wages were not paid by the company when they became due, is, taken in connection with the fact that the company was declared insolvent in January following, evidence that the corporation was then insolvent. But that is a *non sequitur*. If such were the fact, however, it would make no difference. The petitioner says in substance, in reference to both payments, that believing the corporation entirely solvent he advanced the money to accommodate the company and befriend the workmen. He distinctly says that he advanced it because he thought the company's inability to pay was due to a merely temporary want of the requisite funds. The statutory lien given to workmen is to be confined within its legitimate limits. It is not to be extended by a forced application of the principle of subrogation in equity to cases not within the mischief which the law was designed to remedy. The object of the legislature was to secure to a very

meritorious but helpless class of persons the payment of the wages of their toil, and to that end to give them, personally, a paramount lien on the assets of the employer. It did not contemplate giving to creditors from whom the company might borrow money on its own credit with which to pay its workmen, such a lien on the assets for their re-imbursement.