The complainant foreclosed his mortgage and at the sheriff's sale purchased the property and took title. He failed to make May Strauss Sherman, the holder of a subsequent mortgage, a party to the foreclosure, and now brings this suit to have the Sherman mortgage, now claimed to be owned by the defendants, Mrs. Sutton and Mrs. Reilly, removed, as a cloud on its title, by compelling its surrender and cancellation of record. He alleges that the mortgage was paid by the defendants after his foreclosure suit was begun and is no longer a lien. He also sets up that the defendants are estopped from asserting their mortgage because of their failure to assert it when he bid in the property under his foreclosure sale.
Edward J. Reilly owned a lot fronting eighty feet on Mechanics street, Red Bank. A warehouse stood on the easterly and a dwelling on the westerly half of the lot. The complainant's mortgage covered the warehouse half. Lewis C. Brown held the second and fourth mortgages, and Mrs. Sherman the third, each covering the entire lot. Reilly conveyed the property, subject to the mortgages, to Myram H. Brown, who conveyed to the Reilly Storage and Transportation Company. All these interests, except Mrs. Sherman's, were barred by the complainant's foreclosure suit. Mrs. Sutton, as the solicitor for the Reillys, resisted the complainant's foreclosure, and previously had instituted a suit for the Reillys against the Browns and the transportation company to set aside their mortgages and conveyances for fraud, which, in August, 1924, was decided in their favor by Vice-Chancellor Foster, who withheld the decree until the coming in of an accounting. 2 N.J. Mis. R. 832. While these suits were pending, Mrs. Sherman filed her bill to foreclose her mortgage, entered a decree by default, and under a fi. fa. advertised the property for sale January 28th, 1924. The Reillys being in danger of losing the fruits of their suit against the Browns by the impending sale, Mrs. Sutton procured from Mr. Smock, solicitor of Mrs. Sherman, a postponement of the sale, upon the payment by Mrs. Reilly *Page 405 
of the accrued interest and costs, $548.18. Under later pressure of threatened sale, Mrs. Sutton, on October 1st, 1924, paid the balance, $2,107.40, by her two checks, one to the sheriff for $39.90 for his fees, the other to the order of Mr. Smock's firm (Wilson Smock) for $2,067.50, upon which she wrote, "Full payment of mortgage [and interest] dated October 1/19 for $2,000 made by Edward J. Reilly. For E.J. Reilly Mtg." Mr. Smock, anticipating the payment, settlement having been promised, endorsed on the mortgage: "October 1st, 1924. This mortgage has been paid and satisfied in full. Let it be canceled of record. M.H. Strauss Sherman by Warren H. Smock, her attorney," and left the bond and mortgage with his secretary, who delivered them to Mrs. Sutton on receiving her checks. Under instructions from Mr. Smock the sheriff returned the fi. fa. into court October 3d endorsed "Return satisfied. Money made without sale." On December 10th, 1924, Mrs. Sutton wrote to Mr. Smock:
"In regard to the mortgage for $2,000 which was held by Mrs. Sherman until October 1st, 1924, and which was paid in full with all costs and interest due thereon by Mrs. Reilly and myself at said date, will you kindly request Mrs. Sherman to assign said mortgage to Mrs. Reilly and me, in lieu of cancelling the same, as we intended doing under the then existing circumstances when a conveyance of the premises in question was ordered made to Edward J. Reilly, the original mortgagor, and a merger seemed imminent.
"Such conveyance has not yet been made to Mr. Reilly and the suit in chancery concerning said premises is not closed, therefore we prefer to receive an assignment from Mrs. Sherman rather than merely to cancel the said mortgage of record."
Later, when they met, and upon Mrs. Sutton's request, Mr. Smock drew his pen through the cancellation endorsement and procured an assignment of the mortgage as well as an assignment of the decree to her and Mrs. Reilly and gave her a substitution as solicitor in the cause.
In the face of this documentary evidence Mrs. Sutton insists that she purchased, not paid, the mortgage debt, and asserts that when the sheriff's sale was upon her she, at Vice-Chancellor Foster's suggestion, interviewed Mr. Smock and *Page 406 
obtained from him assurances that he would advise his client to assign the mortgage to a purchaser upon payment of all the charges; that he agreed to, and did, postpone the sale upon the payment by Mrs. Reilly of the costs and interest to date, and that when she, Mrs. Sutton, finally paid the balance out of her own pocket, she asked Mr. Smock's secretary for an assignment, and when told by the secretary that she had no authority to prepare an assignment, replied that she would see Mr. Smock later about it, and that after many futile efforts to see him wrote the letter above quoted, and as a consequence the cancellation endorsement was erased and the assignments delivered. Mr. Smock says he has no recollection of any request for an assignment or a holding out by him that it would be forthcoming, and his secretary finds herself without recollection of a request for an assignment when Mrs. Sutton took the bond and canceled mortgage. This failure to recall was not meant as attributable to faulty memory but in the sense of a qualified denial; that the things did not occur, and Mr. Smock's endorsement of payment on the mortgage and his written direction to the sheriff to return the execution satisfied reflects his then conception of the transaction and sustains his attitude that the mortgage was paid, not purchased. The erasure of the cancellation endorsement and procuring the assignments was not due to an appreciation of an erroneous understanding on his part, and an effort at correction, but, to serve Mrs. Sutton and restore the security which she desired; which, of course, was abortive, if the mortgage debt, in fact, had been paid, and that that was the case and the assignment an after-thought is evinced by the letter of December 10th. Mrs. Sutton argues that the punctuation in the letter is controlling in its interpretation and that "in lieu of cancelling the same," being preceded and followed by commas, and parenthetically used, marks its true sense, but the sentiment of the letter as a whole, in the light of the attending circumstances, is, that when the final payment was made by Mrs. Sutton, Mr. Reilly's title was about to be restored and their interests would then be, inter sese, "merged," as Mrs. Sutton put it, *Page 407 
but as this hoped-for state of affairs had not materialized as speedily as had been expected that "therefore we prefer to receive an assignment from Mrs. Sherman rather than merely to cancel the said mortgage;" and this construction finds support in Mrs. Sutton's testimony that she and Mrs. Reilly had planned, in the presence of Mr. Reilly, that after Mr. Reilly's title had been restored they could sell the mortgage to him. The testimony, taken in its most favorable aspect for the defendants, indicates that Mrs. Sutton obtained a postponement of the Sherman sale upon the payment of the accrued interest and costs; to give her a chance to find a purchaser; that Mr. Smock promised to advise his client to assign if she procured one, and that failing to find one she paid the debt. This is as Mr. Smock and Mrs. Sherman evidently understood the matter. There was no agreement, express or implied, by Mrs. Sherman to sell her mortgage, and as the burden is on the defendants to satisfactorily establish that they purchased it or redeemed it (19 N.J. Eq. 27), and having failed, their claim as assignees at law cannot be recognized.
The denial of a legal status does not, however, involve the defendants' rights as equitable assignees, upon the principle of subrogation. Subrogation proceeds on the assumption that the debt has been paid. While the right does not extend to a mere stranger or volunteer, on the other hand, as stated in 25 R.C.L. 1345:
"Where subrogation is claimed on the ground that the payment was necessary to protect the interests of the subrogee, the extent or quantity of interest which is in jeopardy is not material. If he has any palpable interest, which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could." Mrs. Reilly had an inchoate right of dower at the time she laid out her share of the mortgage debt, and Mrs. Sutton as solicitor in the suit of the Reillys against the Browns and the transportation company had, by the statute, a lien on her client's cause of the action, the land, when she paid the balance. Cum. Supp. Comp. Stat.p. 1805. At that time a thousand-dollar counsel *Page 408 
fee had been awarded her. That the mortgage was paid by the defendants to prevent the foreclosure sale and stripping the Reillys of their equity, and, incidentally, Mrs. Sutton of her interest in the favorable outcome of the Reilly-Brown suit, is beyond question. They were forced to discharge it or lose their all, and on the plainest principle of justice are entitled to be substitued, each pro tanto, in place of Mrs. Sherman. Bigelow
v. Cassedy, 26 N.J. Eq. 557; Shinn v. Budd, 14 N.J. Eq. 234;Sheld. Subr. §§ 13, 20; Robinson v. Leavitt, 7 N.H. 99.
Not only are the defendants entitled to be substituted by operation of law, but a conventional subrogation may be spelled out of the established circumstances in favor of Mrs. Sutton. Mr. Reilly had the greater interest needing protection, and it was primarily to save his estate that the ladies paid off the mortgage, and that Mrs. Sutton paid the principal at his request may be implied from his conduct. They planned, so Mrs. Sutton says, in the presence of Mr. Reilly, that they would each pay a thousand dollars, and after Mr. Reilly recovered his title they would sell the mortgage to him, to which he responded, "That is all right. I might just as well pay you two as pay May Strauss," and, later, when Mrs. Sutton assumed the burden, Mr. Reilly accompanied her to Mr. Smock's office where, with his approval, she paid the debt. Obviously, it was the intention of Mr. Reilly, as well as Mrs. Sutton, that she should have the security of the mortgage; that was their understanding, their agreement. The writer of the text of Subrogation, in 25 R.C.L. 1340, after adverting to the rule of the civil law requiring an absolute and express agreement, and that the courts are not in entire harmony as to such requirements, says: "The generally accepted view at the present time, however, is that it is not necessary that there should be an express agreement that the prior lien shall be kept alive for the benefit of the one advancing the money to pay it, or that it is to be assigned, but if from all the circumstances surrounding the transaction it is clearly to be implied that it was the intention of the parties that the person making *Page 409 
the advance was to have security of equal dignity and position with that discharged, then equity will so decree. In such cases equity, speaking from the standpoint of good conscience, substitutes the person so paying the debt to the place of the original creditor, so far as to enable him to enforce the security for the purpose of reimbursement." A fortiori where he was to have the original security for the debt. The doctrine of the text is not inconsistent with Receiver v. Wortendyke,27 N.J. Eq. 658, where, although it was said by the court of errors and appeals that conventional subrogation can only result from an express agreement either with the debtor or the creditor, the point decided was, that it is not sufficient that a person paying the debt of another should do so merely with the understandingon his part that he should be subrogated to the rights of the creditor. In Tradesmen's Building, c., Association v.Thompson, 32 N.J. Eq. 133, it was held on the authority ofCoe v. Midland Railway Co., 31 N.J. Eq. 105, that a stranger who paid the debt of another with the expectation of being substituted in place of the creditor is entitled to subrogation. In the Coe Case the Wortendyke Case was distinguished. In theNorth River Construction Co. Case, 38 N.J. Eq. 433, the rule of the Coe Case was reiterated and was passed without criticism by the court of errors and appeals in affirming the decree. 40 N.J. Eq. 340.
It appears from the cases that the expectation must be based upon negotiations, not amounting to express agreement, but from which an agreement may be implied. Mrs. Sutton is entitled to be subrogated in the place of the holder of the mortgage, even though she had had no interest to protect.
The defendants, under objection, offered in evidence a letter written by Mrs. Sutton to Vice-Chancellor Foster in January, 1924, in which she related her efforts at staying the Sherman foreclosure suit and procuring a purchaser for the mortgage. The letter, though self-serving, is admissible to show her intentions at that time regarding the paying or purchasing of the mortgage.Speer v. Speer, 14 N.J. Eq. 240; Clark v. Likens,26 N.J. Law 207; Hunter v. State, 40 N.J. Law 495; 7 Enc. Ev. 612. *Page 410 
As to estoppel: Enforcement of the right of subrogation is a matter of equitable discretion and is always exercised with due regard to the legal and equitable rights of others. Gaskill v.Wales, 36 N.J. Eq. 527. Mrs. Sherman was not made a party to the Minton foreclosure suit because, as is alleged, but not proved, Minton's then solicitor was of the opinion that her mortgage did not embrace the land under foreclosure, although the description in the mortgage is plain enough. It is detectable from his cross-examination of the witnesses that after he filed the bill he was not altogether certain of his ground, and was anxious, and that before the sale took place he learned from the sheriff's records that the Sherman execution had been returned satisfied, and felt assured. On the other hand, Mrs. Sutton was under the impression that Mrs. Sherman had been made a party, and in that belief attended the sale, December 29th, 1924, and made no protest when the sheriff called for objections, but shortly after the property was struck off and in the hearing of all present, remarked, to the effect, that the sale did not affect the Sherman and Brown mortgages on the remainder of the lot. Mrs. Sutton's silence before, and casual remarks after, the sale are the grounds of the estoppel. It was during the first week in January following that Mrs. Sutton learned from Minton's solicitor that he, as she says he said, had made a mistake and "forgot" to make Mrs. Sherman a party. He, evidently, at that time, had found the assignment of the Sherman mortgage on record and had sensed the meaning of Mrs. Sutton's remark at the sheriff's sale, and, notwithstanding, and with knowledge of the Sutton-Reilly claim, had the sale confirmed and the sheriff's deed delivered.
It is a strained contention of the complainant that Mrs. Sutton's failure to make known her claim, when called upon by the sheriff, is responsible for the situation in which he finds himself, and that she must suffer for her silence. The shoe is on the other foot. It was his solicitor's neglect to bring in Mrs. Sherman that lies at the bottom of his predicament. Mrs. Sutton lent no complication when she stood by in silence, at the sale, in the belief that it barred her mortgage as to the land sold, nor any when she expressed her view *Page 411 
that it remained a lien on the remainder of the property. She conducted herself honestly, and spoke the truth, and, moreover, induced no material change of the complainant's position. If by any stretch of the imagination it can be said that her words and actions persuaded the complainant to alter his position from mortgagor to purchaser the change is not material. In either aspect the claim of the defendants was an outstanding lien upon the title. His solicitor's failure to retrace his steps and join Mrs. Sherman and these defendants as parties to this suit, after realizing his initial error, and his adding to the confusion by having the sale confirmed and taking title, with full knowledge of the defendants' claim, were of his election and in nowise chargeable to the defendants. "In order to work an estoppel the silence must be under such circumstances that there are both a specific opportunity and a real or apparent duty to speak."10 R.C.L. 692. "To constitute an estoppel in pais there must be an admission intended to influence, or of such a nature as will naturally influence the conduct of another and so change his condition as materially to injure him, if the party making it is allowed to retract it." Phillipsburgh Bank v. Fulmer,31 N.J. Law 52.
The bill will be dismissed.