Complainant sued out of the Bergen county circuit court a writ of attachment against the defendant, Maurice Vaux. Before the defendant appeared, the circuit court, pursuant to the Transfer of Causes act (P.L. 1912 p. 417; Cum. Supp. Comp. Stat. p.2833), ordered the cause transferred to chancery. The reason for the transfer, recited in the order, was "that the plaintiff is and was at the time of the issuance of the said writ of attachment, the wife of the defendant herein and that by reason thereof, this court was without jurisdiction to entertain such suit and such relief as the plaintiff may be entitled to may be had in the court of chancery of New Jersey." In this court the defendant appeared, pleadings were filed and eventually a money judgment was here rendered for complainant and against defendant. Complainant then filed a supplemental bill against her husband and the administrator of one Isabelle E. Oakley, who, pending the cause, had loaned to Vaux $3,000 and had taken as security a mortgage on land of his in Bergen county. Complainant argues that the writ of attachment is still a valid lien and prays that the court by force thereof, may direct the property to be sold free of the mortgage in order to make the debt due complainant. Mrs. Oakley argues that the lien of the attachment was invalid from the beginning because the circuit court had no jurisdiction of the subject-matter of the suit and that whatever lien was obtained by the attachment, was lost by the transfer of the cause to this court.
The writ fastened a lien on defendant's real estate in the county unless the proceedings in the circuit court were coram *Page 588 non judice and wholly void. The attachment issued under the Attachment act of 1901 (Comp. Stat. p. 132), on the ground that the defendant named was not resident in this state at the time and that he owed to plaintiff a debt. The writ emanated from a court of general jurisdiction at law; it was regular on its face and issued in the manner and upon the affidavit prescribed by the statute.
Plaintiff had a perfect cause of action in attachment except for the fact that she was the debtor's wife. The mere existence of the relationship did not, however, destroy the jurisdiction of the law court. Jurisdiction of the subject-matter depends on the record. If the relationship is shown by the complaint, it is ground for demurrer. If not, it may be pleaded in bar and the issue tried. Or the court, on its own motion as in the present instance, may take cognizance of the fact that the parties are husband and wife when it appears. In the absence of the Transfer of Causes act, there would be judgment for defendant on the demurrer or on the verdict sustaining the plea. Drum v. Drum,69 N.J. Law 557. And even if the judgment in such case were for plaintiff, I doubt that it would be void rather than merely erroneous.
The Transfer of Causes act gives to the court in which the suit is begun, jurisdiction of the action for the purpose of the transfer. The process which brings the defendant into the first court is given the same validity for that purpose, at least, as if the court had full jurisdiction of the cause of action; and so upon the transfer, the second court has jurisdiction over his person without further process.
I am satisfied that the issuance of the attachment was not a usurpation of power by the circuit court and that the writ was not void, and this being so, the writ had the effect given it by the statute and was a lien on defendant's land. Indeed, if the writ was void, no action was commenced thereby and there was no cause pending in the circuit court which could be transferred to chancery. Hermann v. Mexican Petroleum Corp., 85 N.J. Eq. 367.
Counsel for defendants object that this line of reasoning *Page 589 
ignores the Transfer of Causes act which permits a transfer only when the first court "has not jurisdiction of the subject-matter" and the order of the circuit court which ascertained lack of jurisdiction; therefore, say counsel, it is established that the attachment was void. There are two answers to this: The statute uses the term "jurisdiction" in a broad sense which includes not only that absolute lack of jurisdiction where the proceedings are utterly void and may be disregarded by a party with impunity, but also the situation where, on the pleadings, or pleadings and proofs, any judgment in favor of the plaintiff would be erroneous. In either such case, if it further appears that relief might be obtained in another court upon the same facts, then the cause may be transferred. The other answer is indicated above, namely, that the statute imparts a modicum of jurisdiction to the court in which the suit was begun and validates the proceedings to the extent necessary for the transfer.
I see no ground for holding that the transfer of the action operated to release defendant's land from the lien of the attachment. The Attachment act, section 8, says that "the lien continues until the debts of the plainiff and the applying creditors are satisfied or the attachment is discharged, or judgment is given against the plaintiff and applying creditors; all conveyances by the defendant pending the attachment are void against the plaintiff and applying creditors." The plaintiff has not yet been paid and there has been no judgment for defendant. There is no general rule of law or of policy which requires a relinquishment of the lien upon a transfer of the cause.
The lien may be made effective by this court and in this cause. Section 16 of the Attachment act provides "that the lien of the judgment upon lands shall relate back to the date of entering the writ of attachment." The suit in which Mrs. Vaux recovered a judgment against her husband is the same suit that was instituted in the law court by the attachment. It is the policy of the Transfer of Causes act that a party shall not be prejudiced by the mistake of counsel in instituting suit in the wrong forum. Equally, a party should not be *Page 590 
given any advantage by reason of the mistake. The Sequestration act (P.L. 1919 p. 444; Cum. Supp. Comp. Stat. p. 261) authorizes a writ of sequestration out of chancery in the same class of cases in which an attachment may be had from a law court. Section 4 makes the writ a lien on real estate from the time it is recorded. Section 15 announces the purpose "to subject the property of non-residents to the satisfaction of claims cognizable in a court of equity in analogy to attachment proceedings at law." The Transfer of Causes act directs that the court to which a cause is sent shall proceed therein "as if the cause or matter had been originally commenced in that court." In my opinion, the lien of the writ may be here enforced.
A question of subrogation is next presented. When the attachment issued, the land was subject to a mortgage for $3,000. Suit was brought to foreclose. Mrs. Oakley made her loan to Vaux for the purpose of paying off the old mortgage and the money was used for that purpose and the mortgage was duly canceled. Her administrator claims a right of subrogation to the lien of the old mortgage and priority to the attachment.
The applicable rule was clearly stated by Vice-Chancellor Reed in Seeley v. Bacon, 34 Atl. Rep. 139. "Complainant was, previous to her loan, an entire stranger to the contract created by the original mortgages. Neither she nor her property was in any way affected by their existence. The only way by which she could obtain a footing for the purpose of invoking the aid of a court of equity to restore in her favor the lien of the original mortgages is by exhibiting such facts as invested her with an interest in these mortgages. She claims that she should be subrogated to the rights of these mortgagees to the amount which she had advanced for their payment. But the mere fact that she advanced $3,500 with the intention that it should be used in the payment of these mortgages, coupled with the fact that this sum was so used, will not entitled her to subrogation. The right to subrogation which springs out of the mere fact of the payment of a debt, and which is termed `legal subrogation,' exists only in favor *Page 591 
of a surety for the payment of the debt, or one who is compelled to pay the debt to protect his own rights. Phoebe Mulford stood in no such attitude when she paid this money. She must, therefore, rely upon an agreement, existing at the time of the payment, with the mortgagor or mortgagee, that she should be subrogated to their liens. This is styled `conventional subrogation.' It is entirely settled that one who advances money to pay a claim for the security of which there exists a lien, in default of an agreement, cannot be subrogated to the rights of the lienor. North River Construction Co.'s Case, 38 N.J. Eq. 433.
Conventional subogration can only result from an express agreement either with the debtor or the creditor. Railway Co.
v. Wortendyke, 27 N.J. Eq. 658; Coe v. Railway Co., 31 N.J. Eq. 105."
There is no evidence or claim that Mrs. Oakley had any agreement that she should be subrogated to the lien of the old mortgage and her taking a new mortgage is evidence that she relied upon it for security. It is also clear that she was not interested in the original mortgage in any way. In SerialBuilding and Loan Savings Institution v. Ehrhardt, 95 N.J. Eq. 607,
and similar cases, relief is based on fraud or mistake. In the Serial Case, for instance, one of the signatures on the new mortgage was a forgery. There is no showing of mistake in the present instance. Mrs. Oakley had notice of the attachment and probably had actual knowledge of it. Whether she knew that the lien of the attachment would be superior to her mortgage does not matter. Garwood v. Adm'rs of Eldridge, 2 N.J. Eq. 145.
The lien of complainant's attachment is superior to the mortgage.
Defendants also contend that complainant has misconceived her remedy. As I understand their position, it is this: Complainant should issue execution and bidders at the sale speculate on the title to be acquired; after the sale, if the administrator seeks to enforce the mortgage, the purchaser may litigate and find whether his speculation was wise or not. Our law is not so primitive.
Parties are not compelled to leap in the dark. Both the *Page 592 
lien held by complainant and that of the judgment are properly enforceable in this court, and this court may determine which is superior. Let there be a decree for complainant.