On July 15th, 1936, the commissioner of banking and insurance took possession of and closed the D'Auria Bank and Trust Company. The bank's depositors were insured by the Federal Deposit Insurance Corporation up to $5,000, and there are approximately twenty-four depositors whose deposits exceed $5,000.
In accordance with an act of congress creating the Federal Deposit Insurance Corporation (48 Stat. at L. 168, tit.12 U.S.C.A. 496 § 264 subsec. (1) (7)) upon the payment of the amount of the insured deposit, the insured depositors executed an assignment to the Federal Deposit Insurance Corporation, and the claim of the Federal Deposit Insurance Corporation based on the assignments was recognized by the commissioner of banking and insurance. All of the depositors have been served with process or have been duly notified of the various steps in this cause.
The commissioner now petitions the court for instruction and sets forth that in making distribution of a first liquidating cash dividend the petitioner is confronted with the following questions:
"1. Should Federal Deposit Insurance Corporation be first entitled to receive full payment of the fifty per cent. dividend based upon the total deposits of the various depositors on the date of closing, so that Federal Deposit Insurance Corporation would first be made whole before any payment of dividend to the excess depositors?
"2. Should the excess depositors and Federal Deposit Insurance Corporation share pro rata in the fifty per cent. dividend based upon the respective amounts of their claims for $5,000 and the excess over $5,000? *Page 505 
"3. Are the excess depositors first entitled to receive full payment of all dividends to be declared, prior to any payment thereof to Federal Deposit Insurance Corporation, so that the excess depositors will have been first paid in full on their entire deposits before Federal Deposit Insurance Corporation receives any payment on account of the $5,000 paid by it to the respective excess depositors?"
The right of the Federal Deposit Insurance Corporation to subrogation is primarily based upon subsection (1) (7) of the act creating the Federal Deposit Insurance Corporation, and the assignment executed by the various depositors to the corporation. That section reads:
"(7) In the case of a closed national bank or District Bank, the Corporation, upon the payment of any depositor as provided in paragraph (6) of this subsection, shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment. In the case of any other closed insured bank, the Corporation shall not make any payment to any depositor until the right of the Corporation to be subrogated to the rights of such depositor on the same basis as provided in the case of a closed national bank under this section shall have been recognized either by express provision of State law, by allowance of claims by the authority having supervision of such bank, by assignment of claims by depositors, or by any other effective method. In the case of any closed insured bank, such subrogation shall include the right on the part of the Corporation to receive the same dividends from the proceeds of the assets of such closed bank and recoveries on account of stockholders' liability as would have been payable to the depositor on a claim for the insured deposit, but such depositor shall retain his claim for any uninsured portion of his deposit: Provided, That the rights of depositors and other creditors of any State bank shall be determined in accordance with the applicable provisions of State law." (Italics mine.)
The assignment which the depositors executed contains the following clause:
"For the purpose of subrogating the Federal Deposit Insurance Corporation to all of claimant's rights against said closed insured bank arising out of the INSURED DEPOSIT in the amount shown above, claimant hereby assigns, transfers and sets over unto said Corporation all claims against said closed insured bank and its stockholders arising out of said insured deposit, together with all evidences of such indebtedness held by claimant." *Page 506 
Subsections (1) (6) and (7) of the federal statute make clear the reason for the assignment. By subsection (7) it is provided with reference to national banks concerning which congress has the power to legislate directly, that Federal Deposit Insurance Corporation, upon the payment to any depositor "shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment." Respecting "any other closed insured bank" concerning which congress could not legislate directly, such as the bank here involved, Federal Deposit Insurance Corporation is prohibited from making any payment to any depositor until its right to be subrogated to the rights of any such depositor to be paid on the same basis as in a closed national bank shall have been recognized either (a) by expressprovision of state law; (b) by allowance of claims by the authority having supervision of the bank; (c) by assignment of claims by depositors or by any other effective method. The subrogation provided by the act includes the right to receive the same dividends from the proceeds of the assets of such closed bank as would be payable to the depositor on his claim for the insured deposit, "but such depositor shall retain his claim for any uninsured portion of his deposit: Provided, that the rights of depositors and other creditors of any state bank shall be determined in accordance with the applicable provisions of state law."
It is the contention of the Federal Deposit Insurance Corporation that the method of payment suggested in question No. 2 should apply, namely, that the corporation and the excess depositors should share pro rata in the fifty per cent. dividend, based upon their respective claims up to $5,000 and the excess over $5,000.
The liquidation of the bank has reached a point where the commissioner is about to make payment of an initial fifty per cent. cash liquidating dividend to all general creditors whose claims have been properly filed and allowed. With respect to depositors whose deposits did not exceed $5,000, there is no question but that Federal Deposit Insurance Corporation is entitled to full payment of the initial fifty per cent. dividend on the respective amounts of deposits paid *Page 507 
and assigned. The problem with which the liquidator is faced relates only to claims where the deposits exceeded $5,000.
It is the petitioner's contention that the proviso at the end of subsection (1) (7) of the act, as amended, in effect makes the right of the Federal Deposit Insurance Corporation as subrogee subject to the applicable provisions of state law. There exists in this state no statute as to subrogation.
Vice-Chancellor Backes in Minton v. Sutton, 100 N.J. Eq. 403,
said: "The writer of the text of subrogation, in25 R.C.L. 1340, after adverting to the rule of the civil law requiring an absolute and express agreement, and that the courts are not in entire harmony as to such requirements, says: `The generally accepted view at the present time, however, is that it is not necessary that there should be an express agreement that the prior lien shall be kept alive for the benefit of the one advancing the money to pay it, or that it is to be assigned, but if from all the circumstances surrounding the transaction it is clearly to be implied that it was the intention of the parties that the person making the advance was to have security of equal dignity and position with that discharged, then equity will so decree. In such cases equity, speaking from the standpoint of good conscience, substitutes the person so paying the debt to the place of the original creditor, so far as to enable him to enforce the security for the purpose of reimbursement.' Afortiori where he was to have the original security for the debt. The doctrine of the text is not inconsistent withReceiver v. Wortendyke, 27 N.J. Eq. 658, where, although it was said by the court of errors and appeals that conventional subrogation can only result from an express agreement either with the debtor or the creditor, the point decided was, that it is not sufficient that a person paying the debt of another should do so merely with the understanding on his part that he should be subrogated to the rights of the creditor. In Tradesmen'sBuilding, c., Association v. Thompson, 32 N.J. Eq. 133, it was held on the authority of Coe v. Midland Railway Co.,31 N.J. Eq. 105, that a stranger who paid the debt of another with the expectation of being substituted in place of the *Page 508 
creditor is entitled to subrogation. In the Coe Case theWortendyke Case was distinguished. In the North RiverConstruction Co. Case, 38 N.J. Eq. 433, the rule of the CoeCase was reiterated and was passed without criticism by the court of errors and appeals in affirming the decree. 40 N.J. Eq. 340.
It appears from the cases that the expectation must be based upon negotiations, not amounting to express agreement, but from which an agreement may be implied."
Not only would the Federal Deposit Insurance Corporation be entitled to be substituted by operation of law, but here the assignment constitutes conventional subrogation or subrogation by agreement.
It was the intent of congress to subrogate the Federal Deposit Insurance Corporation to the rights of the depositor. That intent is to be gathered from a general view of the whole act, bearing in mind the occasion and necessity of the law, the mischief felt, and the remedy in view. The events which led to the passage of the act are so well known, and so fresh in the memory of all as to preclude the necessity here for discussion. The primary rule in construing a statute is to ascertain and give effect to the intention of the legislature and the occasion and necessity of the law. Smith v. Washington Casualty Insurance Co., 110 N.J. Eq. 122; Passaic National Bank and Trust Co. v. Eelman,116 N.J. Law 279.
The assignment itself is complete and certain, and operates to vest in the Federal Deposit Insurance Corporation a pro tanto
assignment of all of the rights of the excess depositors. Should such assignment be open to interpretation, such interpretation favors the contention of the Federal Deposit Insurance Corporation, since it is a general rule of construction that where a contract is made in performance of a statutory obligation and is susceptible of two interpretations, that construction will be given which is in accordance with and in furtherance of the statutory obligation in question.
There is here no question involved concerning the rights of depositors and creditors of a state bank. The question herein involved concerns the respective rights of the Federal *Page 509 
Deposit Insurance Corporation and the depositors, not against the bank, but between themselves under the act and the assignment. Those rights became fixed upon the closing of the bank and came into existence when the depositor executed the assignment and was paid the amount of his insured deposit.
Again, the excess depositors having received all the benefits and advantages provided by the mechanics of the act, the other provisions thereof are equally binding upon them. Aside from the fact that the effect of the assignment is to vest in the Federal Deposit Insurance Corporation the rights of the excess depositors to the amount of the insured deposit, in equity and good conscience it is entitled to share pro rata with the excess depositors in the dividend about to be declared.
The commissioner is therefore instructed that the answers to questions numbered 1 and 3 as stated above, are in the negative, and the answer to question numbered 2 is in the affirmative. *Page 510